IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| US FIRE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL ACTION NO. 21-00226-CG-B ) |
| MARTIN CONTRACTORS, LLC; PHILLIP MARTIN; DONNA MARTIN; 110 LOUISVILLE AVE, LLC; JAMES N. MARTIN; CLM LLC; and SUSAN MARTIN, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Plaintiff's motion for summary judgment (Doc. 39), Defendants' opposition thereto (Doc. 45), and Plaintiff's reply (Doc. 46). For the reasons explained below, the Court finds that Plaintiff's motion for summary judgment should be GRANTED.

## FACTS

Plaintiff, US Fire Insurance Company ("US Fire"), brought this action seeking to enforce a General Indemnity Agreement and to receive reimbursement for losses and expenses incurred in connection with surety bonds executed for the benefit of the Defendants. (Doc. 1). US Fire claims it incurred losses totaling $802,713.59 between November 14, 2019 and December 21, 2021. (Doc. 39-1, PageID.301, 302).

1

The parties entered into a General Indemnity Agreement on September 1, 2015. (Doc. 39-1, PageID.300; Doc. 39-2, PageID.304-313).  Under the agreement the Defendants promised to exonerate, defend, indemnify, and hold US Fire harmless from and against all losses and expenses that US Fire incurred or anticipated that it would incur in connection with the issuance of Bonds.  Specifically, the agreement provides:

> 5. <u>Indemnification and Hold Harmless</u>. The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, defend, indemnify and hold harmless [US Fire] from and against any and all Loss, irrespective of whether [US Fire] has made any payment under any of its Bonds or whether the Indemnitors may have assumed, or offered to assume, the defense of [US Fire] upon any claim. [US Fire] shall be entitled to immediate reimbursement from any and all Loss incurred by it in good faith and under the belief that it was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such payments.  An itemized, sworn statement of Loss by an employee of [US Fire], or other evidence of payment, shall be *prima facie* evidence of the propriety, amount an existence of Indemnitors' liability. Indemnitors shall pay to [US Fire] interest on all disbursements made by [US Fire] at the maximum rate permitted by law, calculated from the date of each such disbursement.  The Indemnitors will, at the request of [US Fire], procure the discharge of [US Fire] from any Bond and all liability by reason thereof.

(Doc. 39-2, PageID.305).  Under the agreement "Loss" means:

> ... all demands, liabilities, losses, costs, damages and expenses of any kind or nature, including legal fees and expenses, court costs, technical, engineering, accounting, consultant, expert witness and/or other professional fees and expenses, including the cost of in-house professionals, which [US Fire] incurs, or to which it may be exposed, in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of: (i) [US Fire's] having executed any Bond or any other instrument or any Modification thereof; (ii) any investigation by [US Fire] in connection with any Bond or Contract; (iii) [US Fire's] prosecuting or defending any action in

2

> connection with any Bond; (iv) [US Fire's] obtaining or attempting to obtain the release of any Bond; (v) [US Fire's] recovering or attempting to recover Property 9as hereinafter defined0 in connection with any Bond or this Agreement; (vi) Indemnitors; failure to perform or comply with any promise, covenant, or condition of this Agreement; (vii) [US Fire's] enforcing by litigation or otherwise any of the provisions of this Agreement; and (viii) all interest accruing thereon at the maximum legal rate. Loss shall also include any and all amounts sufficient to discharge any Claim made against [US Fire]] or any Bond and shall further include any premiums due on any Bond issued by [US Fire] on behalf of the Principal.

(Doc. 39-2, PageID.304-305).  The Agreement defines "Principal" as "any person or entity in whose name a Bond is executed, and shall include any Indemnitor for which Company has issued or shall issue any Bond." (Doc. 39-2, PageID.305). The Agreement also provides that US Fire has the right to "adjust, settle or compromise any Claim" unless the Indemnitors request, in writing, that US Fire "litigate, defend or appeal" the claim and Defendants deposit with U.S. Fire at that time, cash or collateral to pay any judgment that may be rendered. (Doc. 39-2, PaeID.305, ¶ 6).  The Agreement specifically sates that US Fire's "decision to adjust, settle or compromise any Claim shall be final and binding upon the Indemnitors." (Doc. 39-2, PageID.305, ¶ 6).  The indemnity Agreement provides that the Agreement shall be governed by the laws of the state of New York. (Doc. 39-2, PageID.307, ¶ 16).

On April 1, 2020, Martin Construction, Inc. filed Chapter 11 bankruptcy in the Southern District of Alabama. (Doc. 45-6).  Martin Construction's amended creditors schedule listed "United States Fire Insurance Company" as an unsecured creditor with an unknown claim amount. (Doc. 45-5, PageID.431).

Plaintiff asserts that it executed various performance and payment bonds on behalf of Martin Construction, Inc., as Principal, and various obligees in connection with projects within the State of Alabama. (These bonds are listed at Doc. 39-3, PageID.314). After issuing the bonds, US Fire received numerous claims against the bonds, including payment bond claims from subcontractors and suppliers of Martin Construction Inc. alleging that they had not received payment for work performed on the Bonded Projects. (Doc. 39-1, PageID.301, ¶ 10) (These claims are listed at Doc. 39-4, Page ID.335). US Fire investigated all claims made against the Bonds and, if valid, paid the claims. (Doc. 39-1, PageID.301, ¶ 11). In settling the claims, US Fire paid losses and expenses in connection with the bonds totaling $802,713.59. (Doc. 39-1, PageID.301, ¶ 11; Doc. 39-4, PageID.335).

By letter dated February 4, 2021, US Fire demanded indemnification, based on the non-bankrupt Defendants' obligations under the indemnity agreement, in the amount of $243,147.05 and US Fire "demanded that they deposit $906,749.00 in collateral security to protect US Fire from losses and expenses arising from and related to US Fire's issuance of the Performance Bond." (Doc. 39-6, PageID.3561). The Defendants failed, refused and/or neglected to comply with their obligations under the Indemnity Agreement. (Doc. 39-1, PageID.301, ¶ 14). By letter dated, April 13, 2021, US Fire made further demand under the Indemnity Agreement in the amount of $766,853.59. (Doc. 39-1, PageID.302, ¶ 15; Doc. 39-7, PageID.376). Indemnitors still failed to indemnify or otherwise hold US Fire harmless. (Doc. 39-1,

4

PageID.302). As a result of the claims US Fire states that it has incurred $47,276.68 in reasonable attorneys' fees, expert fees, and related expenses in furtherance of its investigation into and defense of the claims, bringing the total claimed loss to $802,713.59. (Doc. 39-1, PageID.302, ¶ 17).

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for

6

trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Claims**

US Fire's complaint asserts claims for 1) specific performance of the Indemnity Agreement, 2) breach of the Indemnity Agreement, 3) attorneys' fees, costs and interest under the terms of the Indemnity Contract, 4) contractual indemnity under the terms of the Indemnity Agreement, and 5) common law indemnity. (Doc. 3). According to US Fire, pursuant to the Indemnity Agreement, it is entitled to $802,713.59 for losses incurred between November 14, 2019 and December 21, 2021. Defendants have not disputed that the Indemnity Agreement is valid or that all of its terms are enforceable. There also appears to be no dispute that the choice-of-law clause in the Indemnity Agreement is controlling and therefore, that New York law applies to the contractual claims in this case.

Defendants assert that there is a genuine dispute of material fact as to the amount of damages that US Fire has suffered. Specifically, Defendants dispute the amount owed for payments to United Markings, Allied Farms, HCL Contracting, LLC., and Tensaw Volunteer Fire Department. Defendants also contend that US Fire's payment of these claims violated the automatic stay.

As to the amounts owed, US Fire asserts that Defendants have been aware of and had the opportunity to dispute these claims when they arose, and that Defendants failed to do so. All of the disputed amounts arise from the New Tensaw Fire Station Project. Tensaw Volunteer Fire Dept. Inc. filed a lawsuit against US Fire in November 2020, alleging that Martin Construction had defaulted on their contract and demanding US Fire pay damages for its failure to perform its obligations under the Performance Bond. (Doc. 46-2). Martin Construction, Inc. has admitted to defaulting on the project and being unable to pay subcontractors and in October 2019, it even requested in writing that US Fire, as the surety, pay $123,521.06 to the Tensaw Volunteer Fire Department. (Doc. 46-4). Although defendants dispute the amount that should have been paid, the Agreement provides that US Fire has the right to "adjust, settle or compromise any Claim" unless Defendants had requested in writing that US Fire litigate, defend, or appeal the claim and deposited collateral to pay for any judgments. (Doc. 39-2, PageID.305, ¶ 6). Defendants have not asserted that they requested that US Fire adjust or deny any of the claims or that Defendants had deposited any collateral. The Agreement

8

goes on to state that US Fire's "decision to adjust, settle or compromise any Claim shall be final and binding upon the Indemnitors." (Doc. 39-2, PageID.305, ¶ 6). New York Courts have held that the surety is entitled to summary judgment if there has been no showing that the contractor deposited collateral or acted in bad faith, where the contract provides that the surety had the right to settle any claim upon the bonds unless the contractor requested that the surety litigate such a claim and deposited collateral. *Gen. Acc. Ins. Co. of Am. v. Merritt-Meridian Const. Corp.*, 975 F. Supp. 511, 516 (S.D.N.Y. 1997) (citing *Ebasco Constructors, Inc. v. A.M.S. Constr. Co.*, 195 A.D.2d 439, 440, 599 N.Y.S.2d 866, 867 (2d Dep't 1993)).

> Sureties enjoy such discretion to settle claims because of the important function they serve in the construction industry, and because the economic incentives motivating them are a sufficient safeguard against payment of invalid claims. The many parties to a typical construction contract—owners, general contractors, subcontractors and sub-subcontractors—look to sureties to provide assurance that defaults by any of the myriad other parties involved will not result in a loss to them. Courts have recognized that "as a practical matter the suppliers and small contractors on large construction projects need reasonably prompt payment for their work and materials in order for them to remain solvent and stay in business."

*Id.* (citing *Schuler–Haas Electric Corp. v. Aetna Casualty & Surety Co.*, 49 A.D.2d 60, 64, 371 N.Y.S.2d 207, 210 (4th Dep't 1975), aff'd 40 N.Y.2d 883, 389 N.Y.S.2d 348, 357 N.E.2d 1003 (1976)).  "The expense, delay, trouble, and risk of loss to the guaranty company is a sufficient safeguard against an unwarranted payment..." *Id.* (citing *National Surety Co. v. Fulton*, 192 A.D. 645, 183 N.Y.S. 237, 238 (1st Dep't 1920)).  Accordingly, the Court finds that, there being no showing of bad faith, the

9

terms of the contract mandate that US Fire's decision to adjust, settle or compromise any claim is final and binding upon the Defendant Indemnitors.

As to Defendants' assertion that the payments violated the automatic stay, the Court finds that argument is also unavailing. On April 1, 2020, the Principal, Martin Construction, Inc., filed Chapter 11 bankruptcy in the Southern District of Alabama. (Doc. 45-6). There has been no suggestion that any of the Defendant Indemnitors filed for bankruptcy relief. Defendants assert that payments made by US Fire to claimants violated the automatic stay because they went to creditors that were named in the bankruptcy. According to Defendants, due to these payments, the debt owed to US Fire, a creditor, increased from $2,530 to over $700,000. As such, Defendants contend that any payments after April 1, 2020, should not be allowed in this suit. However, courts have generally held "that the automatic stay applies only to debtors and that nondebtor codefendants are not entitled to the benefit of the stay." *In re Capitol-York Const. Corp.*, 43 B.R. 52, 55–56 (Bankr. S.D.N.Y. 1984) (citations omitted). An action against a general contractor's surety to recover under a bond does not violate the automatic stay because the bond is not property of the debtor's estate. *Id.* at 56; see also *Empire Enterprises JKB, Inc. v. Union City Contractors, Inc.*, 660 F. Supp. 2d 492, 495 (W.D.N.Y. 2009) ("The automatic stay does not apply, however, to claims against the bankrupt debtor's sureties. (citing *Capital-York ibid.*)). Thus, the above cases indicate that the claims against US Fire, the surety here, could proceed to execution

without violating the automatic stay. Presumably, the total debt owed by Martin Construction Inc. did not change. The debts owed to the claimants simply transferred to US Fire upon its payment of those claims. And, if US Fire is successful in this action against the Defendant Indemnitors and ultimately obtains payment from the Defendant Indemnitors of the amount it alleges it is owed, US Fire's claim against the debtor, Martin Construction Inc., will decrease or be eliminated. Thus, the Court finds US Fire's payments to the claimants did not violate the automatic stay.

## CONCLUSION

For the reasons stated above, the Court finds that US Fire has shown that there is no genuine dispute of material fact as to the amount of the damages owed to US Fire. Accordingly, the motion of Plaintiff, US Fire Insurance Company for summary judgment (Doc. 39), is **GRANTED**.

**DONE** and **ORDERED** this 13th day of September, 2022.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE